**POWERHOUSE LEGAL, P.C.**
MARC Y. LAZO, SBN: 215998
ALEXANDER A. POWERS, SBN: 350967
21163 Newport Coast Dr. #245
Newport Beach, CA 92657
Phone No.:   (949) 791-4050
Fax No.:      (949) 791-4224
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

JANE DOE, individually and on behalf of all others similarly situated,

                    Plaintiff,

          v.

BARCLAYS PLC, a public limited company; JAMES E. STALEY, an individual; and DOES 1-10 inclusive,

                    Defendants.

CASE No.:  8:26-cv-01377-WLH-(ASx)

Judge: Hon. Wesley L. Hsu

**PLAINTIFF'S OBJECTIONS TO APPLICATION OF NON-RESIDENT ATTORNEY CHRISTOPHER DUFFY TO APPEAR IN A SPECIFIC CASE *PRO HAC VICE* [DKT. 16]**

**[Declarations of Marc Lazo and Alexander Powers submitted concurrently herewith]**

Plaintiff Jane Doe hereby objects ("Objections") to the Application of Non-Resident Attorney Christopher Duffy to Appear in a Specific Case *Pro Hac Vice* ("Application"), filed by defendant Barclays PLC ("Barclays"). (Dkt. 16.)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    BACKGROUND FACTS

Barclays "specially" appeared in this action on July 29, 2026, and through the Declaration of Christopher Duffy ("Duffy Declaration") has affirmatively misrepresented to this Court that counsel for Barclays and counsel for Plaintiff conferred pursuant to Local Rule 7-3 on July 20 and July 29, 2026, prior to the filing of Barclays' pending Motion for Extension of Time ("Extension Motion"). (Dkt. 12 and 12-1, ¶¶ 7 and 15-16.) Duffy—who admits he is not licensed in this state (much less this district)—purports to have been the attorney for Barclays who engaged in these conferences.[1] (Dkt. 12 and 12-1, ¶ 1.)

Not only was it impossible for Barclays to comply with Rule 7-3 in this case through an unadmitted attorney; any conferences that did occur between Duffy and counsel for Plaintiff were not in compliance with Rule 7-3, nor did Duffy ever indicate that the purpose of such conferences was to discuss Barclays' intent to file the Extension Motion. (Lazo Decl., ¶ 2; Powers Decl., ¶ 2.)

While these misrepresentations will be discussed in greater detail in Plaintiff's opposition papers to the Extension Motion, they are worthy of mention here to demonstrate Plaintiff's concerns with Duffy's involvement in this case. Not only has Duffy taken unauthorized liberties to interject himself in this case without this Court's approval; he has made affirmative misrepresentations about the

---

[1] In submitting these Objections, Plaintiff is well aware of the directives contained in this Honorable Court's Standing Order regarding counsel's duties of civility. Plaintiff is by no means intending to attack the character of Duffy; Plaintiff is simply correcting the record and bringing these matters which have raised significant concerns for Plaintiff to this Court's attention.

purported discussions that occurred between counsel prior to Barclays' filing of the Extension Motion. (Dkt. 12-1, ¶¶ 9-13 and 15-16.) Indeed, the entirety of the Extension Motion is based on the testimony of Duffy, who has engaged in the Unauthorized Practice of Law without attempting to explain or even disclosing the same in his pending Application.

The following chronology of events demonstrates the unauthorized liberties Duffy has taken with this Court:

1) **July 20, 2026**: Duffy took the initiative to reach out to Plaintiff's counsel on July 20, 2026,[2] inviting a phone call to discuss the complaint filed in this action. (Lazo Decl., ¶ 3; Powers Decl., ¶ 3.) During the call, Duffy asked a series of questions concerning service of the Complaint on Barclays and attempted to elicit material information regarding the other named defendant, in addition to making other inquiries. (*Id*.) Upon Plaintiff's counsel inquiry as to whether Duffy was representing Barclays in this action, Duffy did not affirmatively respond, but stated that he was the person with whom Plaintiff's counsel was to discuss all matters relating to this case. (*Id*.)

2) **July 23, 2026**: Plaintiff's counsel received a letter from Duffy purporting to challenge effective service on Barclays. (Lazo Decl., ¶ 4, Exhibit "A"; Powers Decl., ¶ 4.) The letter contains affirmative representations made on behalf of Barclays regarding the **propriety** of service, such as "Barclays does not consider service of the Action to have been properly effected" and "[w]e reserve all rights, including but not limited to the right to challenge the sufficiency of service." (*Id*.)

---

[2] Plaintiff's counsel had also communicated with Duffy several months ago, prior to the filing of this action.

3) **July 29, 2026**: Plaintiff's counsel received a second brief phone call from Duffy, in which he again inquired as to the status of service on Barclays. (Lazo Decl., ¶ 5.) Plaintiff's counsel did not again hear from him or anyone else purporting to represent Barclays prior to the filing of the pending Extension Motion. (*Id.*) To this end, without any further communication from Duffy or anyone else purporting to represent Barclays, a series of documents was filed on July 29, 2026, by Barclays, including: a Notice of Appearance (Dkt. 9); a Notice of Interested Parties (Dkt. 10); a Notice of Related Cases (Dkt. 11); a First Motion for Extension of Time (Dkt. 12); and the Duffy Declaration (Dkt. 12-1). The Notice of Appearance identifies Arwen R. Johnson as counsel for Barclays—with whom Plaintiff's counsel has never corresponded—and does not contain any mention of Duffy's representation of Barclays in this matter. (Dkt. 9.) Despite this, most of the other aforementioned documents specifically affix Duffy's name above the caption and in the signature blocks. (Dkt. 10, Dkt. 11, Dkt. 12, and Dkt. 12-1.) As noted above, the Duffy Declaration provides the entirety of the substantive basis for the Extension Motion, despite Ms. Johnson's assertion that she now represents Barclays in this action. (Dkt. 12, and Dkt. 12-1.)

4) **August 11, 2026**: Nearly two weeks after the aforementioned filings, Duffy submitted the Application. (Dkt. 16.)

As set forth below, this surreptitious conduct warrants denial of the Application, as Duffy's unauthorized interjection into this matter has not only delayed its procession; Plaintiff must now oppose the Extension Motion and refute the misrepresentations made in the Duffy Declaration. Moreover, no showing has been made as to why Duffy's involvement is necessary or warranted, particularly

given that its counsel is the international firm of King & Spalding, which has no shortage of available resources to defend its client.[3]

## II.    LEGAL ARGUMENT

### A.    Duffy's Conduct Constitutes the Unlawful Practice of Law

Business and Professions Code section 6125 states: "No person shall practice law in California unless the person is an active member of the State Bar." (*Birbrower, Montalbano, Condon & Frank v. Superior Ct.* (1998) 17 Cal. 4th 119 ["*Birbrower*"].) Courts look to state law for guidance in determining whether an individual has engaged in the unauthorized practice of law. (*In re Reynoso* (9th Cir. 2007) 477 F.3d 1117, 1125.) Under California law, in a general sense, the "practice of law" includes merely giving legal advice or the preparation of legal instruments. (*Id.*)

The California Legislature enacted section 6125 in 1927 as part of the State Bar Act (the Act), a comprehensive scheme regulating the practice of law in the state. (*J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 965.) Since the Act's passage, the general rule has been that, although persons may represent themselves and their own interests regardless of State Bar membership, only an active member of the State Bar may practice law for another person in California. (*Ibid.*)

For over a century, case law has explained the "practice of law" as the performing legal services in a matter at any stage of procedure. (*People ex rel. Lawyers' Institute of San Diego v. Merchants' Protective Corp.* (1922) 189 Cal. 531, 535 ["*Merchants*"], superseded by statute on other grounds in *Frye v. Tenderloin Hous. Clinic, Inc.* (2006) 38 Cal. 4th 23.) *Merchants* included the giving of legal advice and preparation of documents in this definition, regardless of

---

[3] See https://www.kslaw.com/offices.

whether they were rendered in the course of litigation. (*Ibid.; see also Mickel v. Murphy* (1957) 147 Cal.App.2d 718, 721 [giving of legal advice on matter not pending before state court violates § 6125], disapproved on other grounds in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 651.) (Quoting *Birbrower*, *supra*, 17 Cal. 4th 119 at 128.)

A district court would thus clearly act within its discretion in denying pro hac vice admission if, for example, an attorney's actions lead the court to conclude the attorney would not abide by the court's rules and practices or be readily answerable to the court. (*In re U.S.* (9th Cir. 2015) 791 F.3d 945, 957.)

Duffy's aforementioned conduct, in addition to the admissions made in the Duffy Declaration, demonstrate that he has engaged in the Unlawful Practice of Law and has knowingly taken liberties which he has failed to disclose to this Court even prior to Barclays' filing of the Extension Motion. Accordingly, the Application should be denied.

**B.     The Application is Also Procedurally Defective, Warranting Denial by its Own Terms**

By its own terms, the instructions contained within the Application state that "[t]he applicant must also attach a Certificate of Good Standing (issued within the last 30 days) from every state bar to which he or she is admitted; *failure to do so will be grounds for denying this Application*." (Dkt. 16.) The Application also calls for an applicant to list "all state and federal courts (including appellate courts) to which the applicant has been admitted." (*Id.*)

In response to this inquiry, Duffy listed the following admissions: State Bar of New York; Southern District of New York; Eastern District of New York; U.S. Court of Appeals for the Second Circuit; U.S. Court of Appeals for the Third Circuit; U.S. Court of Appeals for the Ninth Circuit; U.S. Court of Appeals for the

Eleventh Circuit; Supreme Court of the United States; State Bar of Texas; U.S. District Court for the Eastern District of Wisconsin. (*Id*.) Despite these purported admissions, Duffy only provided a single certificate of good standing from the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, and another from the State Bar of Texas. (*Id*.) Accordingly, Duffy has failed to comply with the clear directives contained in the Application, expressly warranting denial. In this regard, the Application states that the failure to comply with the procedural requirements of the Application is "grounds for denying [the] Application." (*Id*.)

Accordingly, for this independent reason alone, the Application should also be denied.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Application with prejudice.

Dated:  August 12, 2026             POWERHOUSE LEGAL, P.C.

_____
Marc Lazo
Alexander Powers
Attorneys for Plaintiff