ARWEN R. JOHNSON (SBN 247583)
*arwen.johnson@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443-4355

CHRISTOPHER E. DUFFY (admitted *pro hac vice*)
*cduffy@kslaw.com*
**KING & SPALDING LLP**
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 556-2100

Attorneys for Defendant
BARCLAYS PLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JANE DOE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BARCLAYS PLC, a public limited company; JAMES E. STALEY, an individual; and DOES 1-10 inclusive,

Defendants.

Case No. 8:26-cv-01377-WLH-(ASx)
*Hon. Wesley L. Hsu, Courtroom 9B*

**DEFENDANT BARCLAYS PLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

(Prepared with the Assistance of Generative Artificial Intelligence—See Concurrently Filed Declaration of Christopher E. Duffy (Standing Order § K))

Date: November 6, 2026
Time: 1:30 p.m.
Courtroom: 9B

Action Filed: May 28, 2026
Trial Date: None Set

**TO THE COURT, PLAINTIFF, AND HER ATTORNEYS:**

**PLEASE TAKE NOTICE** that on November 6, 2026, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the above-named court, Defendant Barclays PLC ("Barclays") will, and hereby does, move this Court for an Order dismissing all of Plaintiff's claims against Barclays under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and the doctrine of *forum non conveniens*.

Specifically, (1) the Court does not have personal jurisdiction over Barclays; (2) England presents an adequate alternative forum, which is favored by the balance of both public and private factors; and (3) the Complaint fails to allege sufficient facts to support any of Plaintiff's seven causes of action against Barclays. Accordingly, Barclays respectfully requests that the Court enter the Proposed Order accompanying this Motion.

In accordance with this Court's Order at Dkt. No. 27, the following memorandum of law will address just the first two arguments listed above, namely that: (1) the Court does not have personal jurisdiction over Barclays; and (2) England presents an adequate alternative forum, which is favored by the balance of both public and private factors. Barclays expressly reserves the right to raise any and all defenses not addressed in this memorandum, including but not limited to statute of limitations defenses, in subsequent briefing or proceedings.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the supporting Declaration of Hannah Ellwood, all papers and records already on file with the Court, and the arguments of counsel at the hearing. This Motion is made following conferences of counsel pursuant to Local Rule 7-3, which took place on August 24, 2026, and September 17, 2026, by videoconference.

[*Signatures on following page*]

Dated: September 28, 2026

**KING & SPALDING LLP**

By: */s/ Arwen R. Johnson*
ARWEN R. JOHNSON

CHRISTOPHER E. DUFFY
(admitted *pro hac vice*)

Attorneys for Defendant
BARCLAYS PLC

# TABLE OF CONTENTS


Page

INTRODUCTION ........ 1
THE ALLEGATIONS OF THE COMPLAINT ........ 2
A. The Parties and Relevant Non-Parties ........ 2
B. Barclays' Alleged Connection to the Enterprise ........ 2
ARGUMENT ........ 4
I. There Is No Personal Jurisdiction Over Barclays ........ 4
A. Barclays Is Not Subject to General Jurisdiction ........ 5
B. Barclays Is Not Subject to Specific Jurisdiction ........ 6
1. Barclays Has Not Purposefully Directed Any Contact at California ........ 6
a. Barclays Does Not Maintain Correspondent Banking Relationships ........ 7
b. Third Parties, Not Barclays, Allegedly Solicited Plaintiff ........ 8
c. The Alleged Use of Plaintiff's Identity Does Not Establish Purposeful Direction ........ 9
2. The Claims Do Not Arise Out of Barclays' California Contacts ........ 10
3. Exercising Jurisdiction Over Barclays Would Be Unreasonable ........ 12
II. *Forum Non Conveniens* Warrants Dismissal ........ 15
A. England Is an Adequate Alternative Forum ........ 16
B. Private Interest Factors Favor England ........ 17
1. Residence of the Parties and Witnesses, and the Forum's Convenience ........ 17
2. Access to Evidence and Sources of Proof ........ 18
3. Compulsory Process and Cost of Witnesses ........ 18
4. Enforceability of Judgment and Other Practical Considerations ........ 19
C. Public Interest Factors Strongly Favor England ........ 19
1. Local Interest and Burden on Courts and Juries ........ 20

2. Familiarity with Governing Law ....................................................20
3. Burden on Local Courts and Juries, Court Congestion, and Costs of an Unrelated Dispute ..................................................21

CONCLUSION..........................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Indus. Co. v. Super. Ct.*,
480 U.S. 102 (1987) .......... 13

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) .......... 7, 9

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) .......... 6

*Bank of Hawaii v. Bank of Guam*,
2007 WL 9710798 (D. Haw. Sept. 20, 2007) .......... 7, 10, 11

*Bristol-Myers Squibb Co. v. Super. Ct.of Cal., San Francisco Cnty.*,
582 U.S. 255 (2017) .......... 11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 9, 12, 15

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) .......... 10

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
61 F.3d 696 (9th Cir. 1995) .......... 16

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) .......... 10

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
557 F.2d 1280 (9th Cir. 1977) .......... 5

*Dickens v. NXP Semiconductors*,
703 F. Supp. 3d 1013 (N.D. Cal. 2023) .......... 18, 19, 21, 22

*Doe v. Barnett*,
2026 WL 1365283 (C.D. Cal. May 15, 2026) .......... *passim*

*Doe v. Simpson*,
2026 WL 437999 (C.D. Cal. Feb. 12, 2026) .......... 6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 10, 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 6

*Gov't of the Lao People's Democratic Republic v. Baldwin*,
2022 WL 2047825 (D. Idaho June 7, 2022) .......... 12

*Leetsch v. Freedman*,
260 F.3d 1100 (9th Cir. 2001) .......... 16

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) .......... *passim*

*Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*,
757 F.2d 1058 (9th Cir. 1985) .......... 12, 13, 14, 15

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) .......... 16, 19, 21

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 4, 5, 6, 7

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) .......... 5

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) .......... 4

*Soc'y of Lloyds v. Blackwell*,
127 F. App'x 961 (9th Cir. 2005) .......... 19

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .......... 5

*Van Schijndel v. Boeing Co.*,
434 F. Supp. 2d 766 (C.D. Cal. 2006) .......... 16, 19, 21

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... *passim*

*X Corp. v. Ctr. for Countering Digital Hate Ltd.*,
724 F. Supp. 3d 921 (N.D. Cal. 2024) .......... 8, 13

*Ziegler v. Indian River Cnty.*,
64 F.3d 470 (9th Cir. 1995) .......... 14

**Statutes**

Cal. Civ. Proc. Code § 410.10 .......... 5

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) .......... 1, 5

## INTRODUCTION

This action seeks to bring claims against defendant Barclays PLC ("Barclays") and its former CEO James E. Staley ("Staley") in connection with alleged financial crimes and other misconduct by a U.K. luxury concierge company named Quintessentially.[1] The claims against Barclays should be dismissed in their entirety.

*First*, the claims should be dismissed under Rule 12(b)(2) as there is no personal jurisdiction in this Court over Barclays, which is a holding company based in London, England. Stripped of hyperbole, the Complaint asks this Court to accept that an English holding company with no offices, employees, real estate, or licensed presence in California—and which does not even operate as a bank—is somehow subject to the jurisdiction of this Court based on nothing more than the fortuity of Plaintiff's alleged residence here. That is not how personal jurisdiction works. The Court should dismiss the Complaint on personal jurisdiction grounds, just as this Court recently did in an analogous action brought by Plaintiff's counsel against an England-based Quintessentially entity.

*Second*, even if there were personal jurisdiction, the claims against Barclays would still be subject to dismissal under the doctrine of *forum non conveniens*. The center of gravity for the allegations against Barclays in the Complaint is England, not California. As described below, Barclays is based in England and lacks any operations in California. Additionally, of the 48 non-parties named throughout the Complaint, none of them is alleged to reside in California, and, of the 18 entities with physical addresses or countries of residency alleged in the Complaint, 15 are alleged to be located in England. The Complaint also repeatedly invokes issues of English law and regulation, and references investigations and rulings by the U.K.'s Prudential Regulation Authority, Financial Conduct Authority, and Upper Tribunal. Moreover, even if Barclays was a bank, the banking laws applicable to its activity would be

[1] Capitalized terms otherwise undefined have the meanings given to them in the Complaint.

England's, not California's, or those of the United States. A court in this District recently dismissed nearly identical claims against England-based defendants on *forum non conveniens* grounds, and the same outcome should apply here. *Doe v. Barnett*, 2026 WL 1365283, at *9 (C.D. Cal. May 15, 2026).

## THE ALLEGATIONS OF THE COMPLAINT

### A. The Parties and Relevant Non-Parties

Plaintiff is an individual, proceeding as a "Jane Doe," who alleges that she resides in California. Compl. ¶12.

Plaintiff alleges that Barclays is "a global financial institution that transacts substantial business in California, and . . . has a substantial customer base in this state." Compl. ¶13. That allegation is conclusory, pleaded only "on information and belief," and factually wrong. It is directly refuted by the accompanying Declaration of Hannah Ellwood ("Ellwood Decl."), which avers that Barclays is a holding company "incorporated under the laws of England and Wales" whose "registered office is located at 1 Churchill Place in London, England." Ellwood Decl. ¶¶5-6. Further, Barclays "owns no real estate and holds no leases for real property in the United States"; "has no employees in the United States"; "is not registered with the California Secretary of State and is not supervised by the California Department of Financial Protection and Innovation." Ellwood Decl. ¶¶7-9. As Ms. Ellwood also explains, Barclays "does not offer correspondent banking," contrary to the conclusory allegations in the Complaint. Ellwood Decl. ¶10.

### B. Barclays' Alleged Connection to the Enterprise

The Complaint alleges that a network of third parties, affiliated Quintessentially Entities, Quintessentially Directors, and Quintessentially Co-Conspirators, operated a "Sex Trafficking Enterprise." Compl. at 3-4.

It makes conclusory allegations that Barclays facilitated this enterprise by providing banking services to Quintessentially Entities, and refers to a bank account alleged to have been opened by Barclays. However, as explained below, that account

could not have been opened with Barclays, which is not a bank and does not offer correspondent banking. Moreover, the Complaint alleges that this account was opened at the direction of third parties, not through any independent outreach by Barclays to California. Specifically, the Complaint alleges that "[Aaron] Simpson [an alleged Director of Quintessentially] was instrumental in facilitating the opening of Plaintiff's BARCLAYS account" and that Mr. Simpson "represented to BARCLAYS that the account was being established for a holding company which would be utilized as 'an investment vehicle into a USA subsidiary.'" Compl. ¶125.

These allegations directly undermine the Complaint's assertions that Barclays "knowingly solicited Plaintiff, a California resident" or "established a banking relationship with Plaintiff . . . using [her] name[] and personal identifying information" and "took proactive measures to procure the passport[] of Plaintiff." Compl. ¶¶5-6. To the contrary, the Complaint's own averments establish that any such account was opened at the behest of third parties—not through purposeful direction by Barclays toward California.

The Complaint appears to allege that the criminal enterprise used this Barclays account for a so-called shell entity, Sierra Industries Limited ("Sierra"). Compl. ¶¶164-71. Again, the Complaint's own allegations state that the Sierra account was opened in England based on a preexisting relationship—not through any purposeful direction by Barclays to California. Compl. ¶¶131(c); 140 (indicating that Sierra's Barclays account received funds denominated in British pounds). In particular, the Complaint alleges that in "March of 2016, representatives of the Quintessentially Entities corresponded with BARCLAYS personnel" to establish Sierra's account, and that because the "Quintessentially Group [was] well known to Barclays," the account purportedly was opened "without any level of scrutiny." Compl. ¶¶166, 168. The Complaint further alleges that Sierra's account was "UK-based" and that Sierra "never actually conducted any business activities" other than those alleged in the Complaint. Compl. ¶¶131(c), 164. Any subsequent transfer of funds to

California—such as the alleged transfers from Sierra's U.K. account to a separate California-based bank account, Compl. ¶131(c)—would have occurred at the direction of third parties, and are not alleged to have happened through any purposeful conduct by Barclays toward California.

The Complaint further establishes that Plaintiff's purported account and Sierra's account are one and the same. In particular, the Complaint alleges that Simpson told Barclays that "Plaintiff's account" was "being established for a holding company which would be utilized as 'an investment vehicle into a USA subsidiary,'" and that it was in the business of "software development . . . for salesforce widgets." Compl. ¶125. The Complaint makes substantially identical allegations regarding Sierra: that Quintessentially personnel represented Sierra "was to be used as 'an investment vehicle into a USA subsidiary'" and "was developing software 'for Salesforce Widgets.'" Compl. ¶166. The Complaint does not allege that Plaintiff had her own account.

The Complaint also alleges that Barclays held other accounts for "members of the Enterprise" but provides no details as to the nature of those accounts, who exactly owned those accounts, or where they were located. Compl. ¶177. Regardless, any such accounts would not be held by Barclays PLC because it is a holding company and does not issue bank accounts. Ellwood Decl. ¶10.

The allegations in the Complaint are disturbing, but they do not support any viable legal claim against Barclays, as explained below.

## **ARGUMENT**

### **I. There Is No Personal Jurisdiction Over Barclays**

Plaintiff cannot meet her burden of establishing personal jurisdiction over Barclays—an English holding company with no offices, employees, or operations anywhere in the United States. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). A federal court may exercise personal jurisdiction over a nonresident defendant only if doing so comports with due process. *Schwarzenegger v. Fred Martin Motor Co.*,

374 F.3d 797, 800-01 (9th Cir. 2004). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800-01; *see also* Cal. Civ. Proc. Code § 410.10.

Plaintiff's "'bare bones' assertions of minimum contacts with the forum" and "legal conclusions unsupported by specific factual allegations" fall far short of satisfying this burden. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). The Complaint offers no facts showing that Barclays itself took any action directed at California. The Complaint asserts, in conclusory fashion, that Barclays "transacts substantial business in California" and "has a substantial customer base in this state." Compl. ¶13. But these are bare assertions with no factual support. Barclays is an English holding company with no offices, employees, or presence in California, or even the United States. It does not operate as a bank and does not issue accounts. The sole alleged connection to California is that Plaintiff resides here—but "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Moreover, on a Rule 12(b)(2) motion, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Plaintiff's allegations are flatly contradicted by the Ellwood Declaration, which establishes beyond dispute that Barclays has no operations, employees, or physical presence anywhere in the U.S. Once a defendant submits evidence controverting the allegations, as here, the plaintiff may not rely on its pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted).

**A. <u>Barclays Is Not Subject to General Jurisdiction</u>**

Plaintiff has no plausible argument for general jurisdiction here, which requires that a corporation's "affiliations with the State are so 'continuous and

systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Barclays is an English public limited company "incorporated under the laws of England and Wales" with its "registered office . . . located at 1 Churchill Place in London, England." Ellwood Decl. ¶¶5-6. It "has no employees in the United States" and "owns no real estate and holds no leases for real property in the United States." Ellwood Decl. ¶¶7-8. Barclays is "at home" in England, not California. *Cf. Doe v. Simpson*, No. 25-cv-9942-WLH-AS, 2026 WL 437999, at *5 (C.D. Cal. Feb. 12, 2026) ("The evidence before the Court fails to come close to demonstrating continuous and systematic general business contacts by [Quintessentially].").

**B. <u>Barclays Is Not Subject to Specific Jurisdiction</u>**

Plaintiff likewise fails to establish specific jurisdiction, as Barclays has not purposefully directed any conduct sufficient to "create a substantial connection" with California. *Walden*, 571 U.S. at 284. Specific jurisdiction requires: (1) purposeful direction or availment; (2) claims arising out of forum-related activities; and (3) reasonableness. *Schwarzenegger*, 374 F.3d at 802.

Plaintiff bears the burden on prongs one and two; if both are satisfied, the burden shifts to Barclays to show that the exercise of jurisdiction would be unreasonable. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021). As explained below, Plaintiff cannot satisfy any prong, as she has not established "the relationship among the defendant, the forum, and the litigation" required for specific jurisdiction. *Walden*, 571 U.S. at 284; *accord Simpson*, slip op. at 11-12 (applying *Walden* and dismissing for lack of personal jurisdiction over a Quintessentially entity).

**1. <u>Barclays Has Not Purposefully Directed Any Contact at California</u>**

The Complaint does not allege any conduct by Barclays that was expressly aimed at California. For tort cases, the Ninth Circuit applies the *Calder* "effects" test to evaluate purposeful direction for the first prong, under which the defendant must

have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citation omitted). Notably, "it is the defendant's conduct that must form the necessary connection with the forum State," as "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285; *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (noting that the focus is on the defendant's "own contacts" with the forum).

The Complaint attempts to identify three categories of alleged purposeful availment, which all fail: correspondent banking, third-party "solicitation," and identity use.

***a. Barclays Does Not Maintain Correspondent Banking Relationships***

Plaintiff incorrectly asserts that Barclays' conduct was "purposely directed to and perpetrated through financial institutions in California—including correspondent banks of BARCLAYS in California." Compl. ¶8. However, Barclays does not maintain correspondent banking relationships, and even if it did, Ninth Circuit precedent is clear that such relationships do not constitute purposeful direction.

In *Bank of Hawaii v. Bank of Guam*, for example, the court ruled that correspondent banking relationships were insufficient to establish personal jurisdiction, noting that "[p]articipating in a clearinghouse system is a technological necessity of modern banking, similar in some respects to having telephone service." 2007 WL 9710798, at *5 (D. Haw. Sept. 20, 2007) (quoting *Resolution Trust Corp. v. First of Am. Bank*, 796 F. Supp. 1333, 1335 (C.D. Cal. 1992)). Plaintiff's allegation that Barclays uses California correspondent banks as passive conduits for international transfers is factually inaccurate, but, in any event, refers to the very "technological necessity" that courts routinely find insufficient to establish personal jurisdiction.

***b. Third Parties, Not Barclays, Allegedly Solicited Plaintiff***

The Complaint alleges that Barclays "solicited Plaintiff, a California resident—and other California residents—*at the behest of certain members of the Sex Trafficking Enterprise*, for the purpose of establishing banking relationships and opening a BARCLAYS bank account." Compl. ¶5 (emphasis added). Setting aside that Barclays is a holding company that does not open accounts, the Complaint does not allege that Barclays independently reached into the California market to solicit business. Rather, it alleges that Simpson and other non-parties orchestrated any alleged contact Barclays made with California. *See* Compl. ¶125 (alleging that "Simpson was instrumental in facilitating the opening of Plaintiff's BARCLAYS account" and that Simpson "represented to BARCLAYS that the account was being established for a holding company which would be utilized as 'an investment vehicle into a USA subsidiary'").

The Complaint further alleges that "representatives of the Quintessentially Entities corresponded with BARCLAYS personnel in continuation of the former's efforts to establish" the account, and that "all emails to BARCLAYS came from individuals utilizing '@quintessentially.com' email addresses." Compl. ¶166. Therefore, the Complaint's own factual allegations establish that the impetus, communications, and representations all flowed from the U.K.-based enterprise to Barclays—not the other way around. Barclays is not alleged to have proactively "solicited" anyone; the Complaint instead alleges that Barclays was solicited.

As for the fact that Plaintiff allegedly lives in California, a defendant does not purposefully direct activities at a forum "merely by directing those activities at a person who happens to reside in the forum state, even if the defendant knows that the person resides there." *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 936 (N.D. Cal. 2024). Instead, "it is the defendant's conduct that must form the necessary connection with the forum State." *Walden*, 571 U.S. at 285. Here, Barclays' only alleged connection to California is that it collected identifying

information about a California resident in connection with a U.K. account. This is plainly insufficient. *Id.* ("[T]he plaintiff cannot be the only link between the defendant and the forum."). And, in any event, the Complaint's allegations suggest that Plaintiff did not even have her own account with Barclays. Compl. ¶¶125, 166.

Moreover, where, as here, a third party initiates the transaction, the resulting contacts are properly attributed to that third party, not to the defendant. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (jurisdiction cannot rest on the "unilateral activity of another party or a third person") (citation omitted); *see Axiom Foods*, 874 F.3d at 1070 (focus must be on defendant's "own contacts" with the forum). The Complaint does not allege that Barclays maintained operations in California, sent representatives to California, or that Barclays did business with Plaintiff *because* she resided in California. Instead, the Complaint's own narrative shows that third parties, like Simpson, orchestrated Plaintiff's involvement. Compl. ¶¶125-26. Plaintiff's alleged residence is precisely the kind of "random, fortuitous, or attenuated" contact that due process does not countenance. *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475).

***c. The Alleged Use of Plaintiff's Identity Does Not Establish Purposeful Direction***

The Complaint also attempts to tie Barclays to California by alleging that Barclays "established a banking relationship with Plaintiff and other California residents, using their names and personal identifying information to open an account." Compl. ¶5. In addition to the fact that Barclays PLC would not have held such accounts, this theory fails for at least three reasons.

*First*, as discussed above, the Complaint alleges that third parties, not Barclays, orchestrated the use of Plaintiff's identity. Jurisdiction must rest on the defendant's "own contacts" with the forum, not the acts of third parties.

*Second*, the Complaint alleges that the account itself was based in England—not in California, not at a California branch, and not through any

California-based instrumentality. *See* Compl. ¶¶125, 131(c), 166. Barclays' alleged intake of identifying information belonging to a person who happened to reside in California does not constitute purposeful direction at California.

*Third*, the Ninth Circuit has consistently held that even the misappropriation of a forum resident's identity or intellectual property, "without something more," is not enough to establish jurisdiction. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-20 (9th Cir. 1997). Courts have found "something more" only where defendants engaged in targeted, direct dealings with the forum plaintiff—for example, attempting to purchase misappropriated material from a California plaintiff and then using it to compete in the California market. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011). Here, the required "something more" is absent.

**2. <u>The Claims Do Not Arise Out of Barclays' California Contacts</u>**

Even if Barclays' conduct was purposefully directed to California (which it was not), Plaintiff must also establish that her claims either "arise out of" or "relate to" Barclays' alleged California contacts. For a claim to "arise out of" the defendant's contacts with the forum state, Plaintiff must establish "but-for" causation by showing that, but for Barclays' contacts with California, her claims would not have arisen. *See Bank of Hawaii*, 2007 WL 9710798, at *6 ("The 'but for' test requires that 'there be some nexus between the cause of action and the defendant's activities in the forum.'") (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *rev'd on other grounds* 499 U.S. 585 (1991)). For a claim to "relate to" the defendant's contacts with the forum state, a plaintiff must establish "a strong relationship among the defendant, the forum, and the litigation." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365-66 (2021) (quotations and citations omitted).

Plaintiff falls far short of adequately alleging but-for causation. Barclays' only alleged California connections—that Plaintiff happened to reside in California when her identifying information was collected, and that some transactions were later

routed through California correspondent banks—are unrelated to Barclays PLC. As explained above, Barclays is a holding company that does not maintain correspondent banking relationships, Ellwood Decl. ¶10, and so would not be involved in collecting Plaintiff's information, or processing the alleged transactions. Accordingly, Plaintiff cannot claim that but-for Barclays PLC's California contacts, her claims would not have arisen, as Barclays PLC does not have any California contacts.

While the inquiry ends there, it is worth noting that Plaintiff's broader claims against Barclays have no connection to California. These claims arise from (1) the alleged opening and maintenance of an England-based account for Quintessentially entities/individuals, and (2) Barclays' decision to hire Staley as its CEO—none of which has any connection to California. Thus, even if Barclays had some contacts with California, which it does not, there is no nexus between Plaintiff's claims and any such contacts. *Bank of Hawaii*, 2007 WL 9710798, at *6-7 (finding no nexus where the relevant transactions occurred in a different territory, and the forum's connection was merely that the plaintiff lived there).

For the same reasons, Plaintiff also has not shown relatedness to Barclays PLC's contacts with California. The Complaint's core allegations of Barclays' wrongdoing concern conduct that is linked to England, not California. The key account was a "UK-based bank account," *see* Compl. ¶131(c). None of these allegations concern conduct that Barclays is alleged to have undertaken in California. And unlike the "paradigm example" of specific jurisdiction, Plaintiff has not shown that Barclays "systematically served a market in [California] for the very [bank accounts] that" underlie Plaintiff's theory of harm. *Ford Motor Co.*, 592 U.S. at 365-366; *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (noting that there "must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence

that takes place in the forum State and is therefore subject to the State's regulation.") (citation omitted).

**3. <u>Exercising Jurisdiction Over Barclays Would Be Unreasonable</u>**

Even if the Court were to find that the first two prongs of the specific jurisdiction test were satisfied—which, for the reasons above, it should not—the exercise of jurisdiction would still be unreasonable because it would not comport with notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 477. In the Ninth Circuit, this determination is governed by seven factors: "(A) the extent of the purposeful interjection into the forum state, (B) the burden on the defendant of defending in the forum, (C) the extent of conflict with the sovereignty of defendant's state, (D) the forum state's interest in adjudicating the dispute, (E) the most efficient judicial resolution of the controversy, (F) the importance of the forum to plaintiff's interest in convenient and effective relief, and (G) the existence of an alternative forum." *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985).

Each factor independently favors Barclays, and thus favors dismissal.

*Purposeful interjection.* As discussed above, Barclays' interjection into California is nonexistent. Barclays has no offices, no employees, and no real estate in the U.S.; is neither registered with nor supervised by the California government; and does not operate as a bank, establish any bank accounts (including the account at issue), or offer correspondent banking. Ellwood Decl. ¶¶6-10. In *Gov't of the Lao People's Democratic Republic*, the court found this factor favored the defendants because a connection to the forum "via maintenance and use of [forum] bank accounts is too attenuated to be considered more than slight purposeful interjection into the forum." 2022 WL 2047825, at *13 (D. Idaho June 7, 2022) ("Bank transfers, without more, are minimal interjections into the forum."). Here, there is even less: the Complaint does not identify any affirmative act by Barclays that was directed at California other than alleged bank transfers—which did not even involve Barclays.

*See* Compl. ¶131(c); Ellwood Decl. ¶10. This factor strongly favors Barclays and dismissal.

*Burden on the defendant.* Requiring Barclays to defend itself in California would impose substantial burdens, including international document production, potential international travel for witnesses, and the necessity of litigating in a foreign legal system. *See Paccar*, 757 F.2d at 1065 (holding that requiring a Kuwaiti corporation to incur the burden of traveling to California to defend itself would be an unreasonable exercise of jurisdiction). In *X Corp.*, the court found this factor favored a European defendant that "exclusively operate[d] in Europe" and had "no employees in the U.S."—a profile that matches Barclays. 724 F. Supp. 3d at 944; Ellwood Decl. ¶¶5-6, 8; *see also Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 114 (1987). This factor favors Barclays, and thus favors dismissal.

*Conflict with sovereignty.* Exercising jurisdiction over Barclays would implicate the U.K.'s substantial sovereignty interest in overseeing its financial institutions. Compl. ¶3 n.5; *see Paccar*, 757 F.2d at 1065 (ruling that the district court's assertion of jurisdiction was unreasonable because it "interfered with the sovereignty of Kuwait and the right of Kuwaiti courts to resolve disputes involving Kuwaiti corporations"). The U.K.'s regulatory authority over Barclays PLC represents a direct sovereign interest in adjudicating matters arising from the same conduct. This factor also favors Barclays, and also favors dismissal.

*Forum state's interest.* California's interest in adjudicating this dispute is marginal at best. Plaintiff's alleged California residence is the sole connection to this state for any alleged conduct involving Barclays, which has no California presence whatsoever. Ellwood Decl. ¶¶5-9. The conduct that forms the basis of Plaintiff's claims against Barclays specifically involves an England-based account. *See* Compl. ¶131(c). Thus, California's "interest is slight compared to the time and resources the district court . . . would expend if it were to retain jurisdiction over this dispute." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001); *see also Paccar*,

757 F.2d at 1065 ("California has no special interest in regulating banks that are not chartered under California law."). By contrast, the U.K. has a far greater interest in adjudicating claims arising from the conduct of its own regulated institution and the former head of that institution. This factor favors Barclays, and thus favors dismissal.

*Most efficient judicial resolution.* The evidence, witnesses, and regulatory records are overwhelmingly located in England. The Complaint's allegations make clear that the alleged "Enterprise" has its center of gravity in England, and that any relevant account documentation for the England-based account is there too. Adjudicating this dispute in California would also require the Court to navigate the U.K.'s data protection and financial services regulations—subjects with which an English court is more familiar. *See Paccar*, 757 F.2d at 1065-66 (ruling that "California is a poor choice as a forum" where "[m]ost of the evidence with regard to [the] issues is located" in a foreign jurisdiction). This factor strongly favors Barclays, and thus strongly favors dismissal.

*Plaintiff's interest in convenient and effective relief.* The Ninth Circuit gives little weight to a plaintiff's interest in the chosen forum. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 476 (9th Cir. 1995) ("[N]either the Supreme Court nor our court has given much weight to inconvenience to the plaintiff.") (citation omitted). Regardless, although Plaintiff resides in California, she would not be without relief in England. *See Paccar*, 757 F.2d at 1066 (ruling that this factor favored defendant where the plaintiff failed to show that it could not receive effective relief in Kuwait). As the *Doe v. Barnett* court recently confirmed, English tort law provides remedies for Trafficking Victims Protection Act ("TVPRA")-type sex trafficking claims. 2026 WL 1365283, at *9 (C.D. Cal. May 15, 2026). At best, this factor is neutral; it does not overcome the six factors that favor Barclays.

*Existence of an alternative forum.* English courts provide an adequate alternative forum, as the *Barnett* court held under virtually identical circumstances.

2026 WL 1365283, at *9; *see also Paccar*, 757 F.2d at 1066 (ruling that the burden of proof for this factor rests with plaintiff). This factor favors Barclays and dismissal.

In sum, all seven reasonableness factors favor Barclays. As required by *Burger King*, Barclays has presented the "compelling case" that the exercise of jurisdiction would be unreasonable. 471 U.S. at 477. The Complaint's conclusory assertion that Barclays "transacts substantial business in California" is flatly contradicted by the Ellwood Declaration, and provides no basis for this Court to exercise personal jurisdiction over an English holding company with no presence in this forum. This Court therefore should decline to exercise personal jurisdiction over Barclays, and dismiss it from the case.

## II. ***FORUM NON CONVENIENS*** **WARRANTS DISMISSAL**

Even if personal jurisdiction existed, the claims against Barclays should be dismissed on *forum non conveniens* grounds. Dismissal of an action on *forum non conveniens* grounds is appropriate where (1) "an adequate alternative forum exists," and (2) "the balance of private and public interest factors favors dismissal." *Lueck*, 236 F.3d at 1142. Both factors are satisfied here. Indeed, thirteen days before this Complaint was filed, a court in this District applied precisely this framework to nearly identical TVPRA claims brought against U.K.-incorporated entities, and granted dismissal in favor of England. *Barnett*, 2026 WL 1365283, at *6-14.

As in *Barnett*, the two factors weigh decisively in favor of dismissal here. The Complaint's center of gravity is England, not California. Barclays is headquartered in London; the account at issue was U.K.-based; and the 48 non-parties are all located outside California—at least 15 of which are alleged to be in England. The regulatory proceedings referenced throughout the Complaint took place in England. While Plaintiff resides in this forum, she would have access to adequate remedies in England, as *Barnett* confirmed. 2026 WL 1365283, at *9-10.

**A. <u>England Is an Adequate Alternative Forum</u>**

Plaintiff cannot dispute that Barclays is subject to process in England or that English courts offer adequate remedies. "An alternative forum is adequate if '(1) the defendant is amenable to process there, and (2) the forum offers a satisfactory remedy.'" *Id.* at *8 (quoting *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1225 (9th Cir. 2011)). Barclays—a holding company "incorporated under the laws of England and Wales" whose "registered office is located at 1 Churchill Place in London, England," Ellwood Decl. ¶¶5-6—is plainly amenable to process in England, and will submit to the jurisdiction of the English courts. *See Barnett*, 2026 WL 1365283, at *9; *see also Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 775 (C.D. Cal. 2006) (dismissal where defendants agreed to submit to jurisdiction abroad).

England also offers satisfactory remedies. A court may only conclude that dismissal would not be in the interests of justice where "the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). In other words, the "foreign forum must provide the plaintiff with some remedy for his wrong"—but need not provide an identical or equally favorable one. *Lueck*, 236 F.3d at 1143; *see also Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 701-02 (9th Cir. 1995) ("A court may dismiss on *forum non conveniens* grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum. However, the alternative forum must provide some potential avenue for redress.") (quoting *Ceramic Corp. of Am. v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir. 1993)). Additionally, "competency to decide the legal questions involved will also be considered," *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001). Here, an English court would be more competent to decide claims implicating English regulatory matters and possibly implicating English law, which "weighs especially heavily in favor of" dismissal, *id.* at 1105. As *Barnett* held, English tort law provides remedies for TVPRA-type sex

trafficking claims even though English law lacks a discrete civil trafficking cause of action. 2026 WL 1365283, at *9-10.

**B. <u>Private Interest Factors Favor England</u>**

The private interest factors also favor England. These factors assess the practical realities of litigating a case in a particular forum, focusing on where the parties and evidence are located, and whether the chosen forum can efficiently and fairly resolve the dispute. The relevant factors include "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Barnett*, 2026 WL 1365283, at *8 (quoting *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009)); *accord Lueck*, 236 F.3d at 1145 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Here, each of these factors points to England as the appropriate forum.

**1. <u>Residence of the Parties and Witnesses, and the Forum's Convenience</u>**

Barclays is incorporated under the laws of England and Wales, and headquartered in London. Ellwood Decl. ¶¶5-6. It does not operate as a bank and has no operations in California. Ellwood Decl. ¶¶5-10. All but two of the Quintessentially Entities are English companies; the other two are based in Delaware and the British Virgin Islands, respectively. Compl. ¶¶48-66. Moreover, the Sierra account referenced by Plaintiff was established in England. Compl. ¶131(c). The center of gravity for the allegations in the Complaint is England, not California.

Plaintiff is the only alleged resident of California, making California, on balance, an inconvenient forum to the litigants, as well as the dozens of non-party witnesses who are not alleged to reside in California. Indeed, the Complaint names 48 non-parties, and not one of them is alleged to reside in California. Compl. at 3 n.1; *id.* ¶¶20-65. Of the 18 entities with physical addresses or countries of residency

alleged in the Complaint, 15 are alleged to be located in England. Compl. ¶¶50-64. *See Barnett*, 2026 WL 1365283, at *11 (factors favored dismissal despite plaintiff, one of her children, and some entities being located in California); *Dickens v. NXP Semiconductors*, 703 F. Supp. 3d 1013, 1020 (N.D. Cal. 2023) (factors favored dismissal where most parties and witnesses resided in Germany). Here, the conduct giving rise to Barclays' alleged liability—the alleged opening of a U.K.-based bank account—is alleged to have occurred in the U.K., and witnesses with knowledge of that event are likely to be located there. Thus, the first two private interest factors favor dismissal.

**2. <u>Access to Evidence and Sources of Proof</u>**

Any conduct giving rise to Barclays' alleged liability likely occurred in the U.K., and the relevant evidence would likely be there too. For example, the Complaint asserts that many transactions were denominated in British pounds. Compl. ¶140. As *Barnett* noted, obtaining evidence from the U.K. in a U.S. proceeding "would require the parties to comply with the procedures set forth in the Hague Evidence Convention," making it "protracted and burdensome." 2026 WL 1365283, at *11; *see also Lueck*, 236 F.3d at 1146-47 (holding that this factor favored dismissal because many documents and witnesses were controlled by "the New Zealand government" and could not be ordered by the district court to be produced or appear). Certain evidence may also be subject to the U.K.'s data protection regulations. *See Dickens*, 703 F. Supp. 3d at 1021. The third private interest factor favors dismissal.

**3. <u>Compulsory Process and Cost of Witnesses</u>**

Litigating Plaintiff's claims will likely require access to witnesses located in the U.K. For example, evaluating Plaintiff's allegation that "the 'Quintessentially Group [was] well known to Barclays,'" would necessarily require testimony from witnesses based in the U.K. given that the vast majority of the "Quintessentially Entities" are U.K. companies, and that Barclays does not have employees in the U.S.

Compl. ¶¶48-66, 168. English courts can compel those U.K.-based witnesses; this Court cannot. *Barnett*, 2026 WL 1365283, at *12; *see also Piper*, 454 U.S. at 258 (affirming dismissal where "many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview"). Moreover, transporting any witnesses to California is expensive and burdensome, which further favors an English forum. *See Dickens*, 703 F. Supp. 3d at 1021 ("[I]t is clear that the time and expense of bringing witnesses to trial from Germany to the United States (or even from Texas to California) would be quite high."). These private interest factors also favor dismissal.

**4. <u>Enforceability of Judgment and Other Practical Considerations</u>**

English judgments are enforceable in California. *Soc'y of Lloyds v. Blackwell*, 127 F. App'x 961, 962 (9th Cir. 2005); *see also Barnett*, 2026 WL 1365283, at *10. And, because most key evidence and witnesses are in England, litigating Plaintiff's claims in this District would not be easy, efficient, or cost-effective. *See Dickens*, 703 F. Supp. 3d at 1021 ("Because most of the key witnesses in this case live in Germany, litigating in this forum is likely to be impractical and inefficient."). The sixth and seventh private interest factors favor dismissal.

**C. <u>Public Interest Factors Strongly Favor England</u>**

The public interest factors strongly favor England as well. These factors examine whether the forum has a meaningful stake in the dispute and whether litigating there serves broader judicial and societal interests. The relevant factors include "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Barnett*, 2026 WL 1365283, at *8 (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006)); *accord Lueck*, 236 F.3d at 1147 (citing *Piper*, 454 U.S. at 259-61); *Van Schijndel*, 434 F. Supp. 2d at 781. Here, each factor demonstrates that

California has little connection to this dispute, while England's interest is substantial. These factors also favor dismissal.

**1. Local Interest and Burden on Courts and Juries**

The conduct giving rise to Barclays' alleged liability is centered in the U.K. The Complaint repeatedly invokes English law and regulations, including allegations of tax-related misconduct "pursuant to two UK tax initiatives"; and investigations and rulings by the U.K.'s PRA, FCA, and Upper Tribunal. Compl. ¶¶3 n.5, 129, 162, 162 n.29. Moreover, Barclays does not operate as a bank, but even if it did, English banking laws would be applicable to its activity, not California's, because Barclays has no operations here. Ellwood Decl. ¶¶4-9. In *Barnett*, the court acknowledged California's "interest in protecting persons against harms resulting from sex trafficking within its borders," but ultimately concluded that the local interest factor favored dismissal, including because it was "likely that [the] substantial share of affirmative acts or omissions by the corporate defendants that allegedly give rise to plaintiff's TVPRA and common law claims . . . occurred in the U.K. instead of in California" and because "two of the corporate defendants . . . are U.K. incorporated companies that allegedly facilitated Barnett's abuse of plaintiff." *Barnett*, 2026 WL 1365283, at *12-13. The same considerations apply here. Thus, "[a]lthough California has an identifiable local interest in the controversy, it is exceedingly weak; the interest in the U.K. regarding this suit is extremely high." *Id.* at *13 (cleaned up and citations omitted). The first public interest factor favors dismissal.

**2. Familiarity with Governing Law**

In *Barnett*, the court applied California's governmental interest choice-of-law test and concluded that English law governed in that case because "the U.K.'s interests in applying its laws to [the] dispute would likely be more impaired than California's interests would be if U.K. law were not applied." 2026 WL 1365283, at *13. In so holding, the court emphasized that "[u]nlike Congress in the TVPRA, the U.K. Parliament decided against creating a specific civil cause of action for human

trafficking, mode[rn] slavery, or forced labor in" an analogous statute. *Id.* "Given California's minor interest in this dispute, imposing the TVPRA—a United States policy—to this case would impair the U.K. government's policy decision to limit civil remedies for victims of . . . trafficking more so than imposing English tort law would impair California's policies of providing such relief to victims through the TVPRA, a United States rather than California-specific policy." *Id.* Here, just as in *Barnett*, the Court would have to apply California's governmental interest choice-of-law test to determine the applicable law. English law may govern, and adjudicating Barclays' liability might require this Court to evaluate the U.K.'s statutory framework and any relevant financial services regulations—subjects with which an English court is more familiar. *See Piper*, 454 U.S. at 251 ("[T]he public interest factors point towards dismissal where the court would be required to untangle problems in conflict of laws, and in law foreign to itself.") (citation and quotation marks omitted). The second public interest factor favors dismissal.

**3. <u>Burden on Local Courts and Juries, Court Congestion, and Costs of an Unrelated Dispute</u>**

As discussed above, "this Court is less 'well equipped' to handle this action compared to an English court," "primarily because California has comparatively little interest in this dispute compared to the U.K." *Barnett*, 2026 WL 1365283, at *14. Plaintiff's California residence is not enough to overcome the overwhelming balance of factors favoring England. Moreover, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Van Schijndel*, 434 F. Supp. 2d at 783 (quoting *Gulf Oil*, 330 U.S. at 508-09); *see also Dickens*, 703 F. Supp. 3d at 1022 ("[A]sking jurors in California to decide the issues presented here, which arose primarily in Germany and involve a company headquartered in the Netherlands and Texas, would be unduly burdensome.").

And, though not a predominant factor, the *Barnett* court credited the fact that the average time to trial in this District is approximately 115 weeks, compared to

roughly 65-75 weeks for the English court. 2026 WL 1365283, at *14 n.15.

Litigating this dispute in this District would be expensive and time-consuming, including because it would require interpreting foreign law. *See Dickens*, 703 F. Supp. 3d at 1022 (predicting "significant costs to having this Court resolve a dispute that has little relation to this forum" and deciding that potential conflicts between the district court's and German court's interpretations of German statutes "are unnecessary and should be avoided"). "Because the local interest in this lawsuit is comparatively low, the citizens of [California] should not be forced to bear the burden of this dispute." *Lueck*, 236 F.3d at 1147.

In sum, the adequate-alternative-forum requirement is satisfied, and ***every single*** private and public interest factor leans towards dismissal in favor of England. Thus, even if the Court determines that it has personal jurisdiction over Barclays (which it does not), the Court should still dismiss the Complaint based on the doctrine of *forum non conveniens*.

## CONCLUSION

For the foregoing reasons, Defendant Barclays PLC respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

Dated: September 28, 2026

**KING & SPALDING LLP**

By: */s/ Arwen R. Johnson*
ARWEN R. JOHNSON

CHRISTOPHER E. DUFFY
(admitted *pro hac vice*)

Attorneys for Defendant
BARCLAYS PLC

## CERTIFICATE OF COMPLIANCE

Pursuant to Civil L.R. 11-6.2, the undersigned counsel of record for Defendant Barclays PLC ("Barclays") certifies that this brief contains 6,999 words, which complies with the word limit of Civil L.R. 11-6.1.

Dated: September 28, 2026

**KING & SPALDING LLP**

By: */s/ Arwen R. Johnson*
ARWEN R. JOHNSON

Attorneys for Defendant
BARCLAYS PLC